UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLY T.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

1:24-CV-00953 CDH

## INTRODUCTION

Plaintiff Kelly T. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 14; Dkt. 16; Dkt. 25). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On February 16, 2017, Plaintiff protectively filed an application for SSI. (Dkt. 5 at 30, 117).[1] Her application was initially denied on May 25, 2017. (*Id.* at 30, 132-

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

36). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id*. at 140-42), which was held on December 21, 2018 (*id*. at 45-100). On March 15, 2019, the ALJ issued an unfavorable decision. (*Id*. at 27-44). Plaintiff sought review from the Appeals Council, which denied her request on April 23, 2020. (*Id*. at 16-21). Plaintiff commenced an action in this District and on December 9, 2022, the Hon. Elizabeth A. Wolford entered a Stipulation and Order for remand, remanding the matter to the Commissioner for further administrative proceedings. (*Id*. at 744-45).

On remand, additional hearings were held before an ALJ on September 8, 2023, and March 1, 2024. (*Id*. at 660-700). The ALJ issued an unfavorable decision on June 4, 2024 (*Id*. at 630-59). This action followed.

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. § 416.920(a)(4)(ii). An impairment is

"severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* § 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* § 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 416.920(a)(4)(v).

## II. Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for SSI. It is not the Court's

function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (quotation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 16, 2017, the application date. (Dkt. 5 at 636). The ALJ found at step two that Plaintiff had the severe impairments of fibromyalgia, neuropathy, bilateral knee degenerative joint disease, and cervical and lumbar degenerative disc

disease. (*Id.*). The ALJ also concluded that Plaintiff had the following non-severe impairments:

> [R]ight-sided carpal tunnel syndrome, rotator cuff disorder, degenerative joint disease of the right hand, systemic lupus erythematosus (SLE), history of inflammatory poly-arthropathy, Sicca syndrome, Sjogren's syndrome, history of chronic whole body pain and autoimmune disease, Raynaud's phenomenon, migraine headaches, hypertension, mild obesity, dyspnea, tachycardia, palpitations, pericarditis, anemia, dehydration, irritable bowel syndrome, gastritis, gastroesophageal reflux disease (GERD), stomach spasms, liver cysts, hematuria, urinary incontinence, status post appendectomy, hysterectomy, and cholecystectomy, conjunctivitis, vitiligo, tinnitus, sinusitis, sleep apnea, insomnia, fatigue, amnesia, and vitamin deficiencies.

(*Id.*).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 639). At step three, the ALJ specifically discussed the criteria of Listings 1.04, 1.15, 1.16, 1.18, 11.14, and 14.09. (*Id.* at 640-41).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform "less than the full range of light work as defined in" 20 C.F.R. § 416.967(b), and that she specifically could:

> lift and/or carry twenty pounds occasionally and ten pounds frequently, sit for two hours at a time and for eight hours in an eight-hour workday, stand for 45 minutes at a time and for one hour in an eight-hour workday, and walk for 45 minutes at a time and for one hour in an eight-hour workday. [Plaintiff] can occasionally operate foot controls, but she cannot climb ladders, ropes, or scaffolds. [Plaintiff] can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but she cannot tolerate exposure to workplace hazards such as unprotected heights or dangerous machinery, tools, or chemicals.

(*Id.* at 641). The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work. (*Id.* at 646).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 647-48). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from February 16, 2017, through the date of the ALJ's decision. (*Id.* at 648).

## II. The Commissioner's Final Determination is Supported by Substantial Evidence and Does Not Contain a Reversible Legal Error

Plaintiff argues that the ALJ erred in evaluating the opinion of medical expert Dr. Vinay Chopra, who testified at the hearing held on September 8, 2023. (*See* Dkt. 14-1 at 25-30; *see also* Dkt. 5 at 682-85). In her reply papers, Plaintiff makes the additional argument that the ALJ was required to further develop the record because Dr. Chopra was "not qualified to assess fibromyalgia (or any other rheumatological impairments)[.]" (Dkt. 25 at 6). The Court is unpersuaded by these arguments, for the reasons set forth below.

### A. Weighing of Dr. Chopra's Opinion

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "For claims filed before March 27, 2017, the ALJ's decision must account for the 'treating physician rule,'" *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022), pursuant to which the opinion of a treating physician "is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not

inconsistent with other substantial evidence," *Herr o/b/o Greis v. Comm'r of Soc. Sec.*, No. 19-CV-815S, 2020 WL 2468415, at *3 (W.D.N.Y. May 13, 2020) (quotation omitted).

Under this rule, "there are 'specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.'" *Schillo*, 31 F.4th at 74-75 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). The ALJ first determines if the treating physician's opinion is entitled to controlling weight. *Id.* at 75. If it is not, the ALJ must "explicitly consider certain nonexclusive factors" to determine how much weight to give the opinion. *Id*. Such factors include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id*. (quoting *Estrella*, 925 F.3d at 95-96). These factors are referred to as the "*Burgess* factors," in reference to *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *See Schillo*, 31 F.4th at 75 ("Even though this list of considerations is established by regulation, we discussed them at length in *Burgess* . . . and so they are sometimes referred to as the '*Burgess* factors.'"). In connection with both of these steps, the ALJ must give good reasons—that is, "reasons supported by substantial evidence in the record"—for the weight afforded to the treating physician's opinion. *Id*.

"The *Burgess* factors are also applied to the opinions of non-treating physicians, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and

the claimant." *Clinton George K. v. Comm'r of Soc. Sec.*, No. 1:25-CV-03858-GRJ, 2026 WL 1020725, at *4 (S.D.N.Y. Apr. 15, 2026) (quotation omitted).

Here, Dr. Chopra reviewed Plaintiff's medical records and testified at the hearing on September 8, 2023. (Dkt. 5 at 682-85). He opined that Plaintiff could lift and carry up to ten pounds frequently and up to 20 pounds occasionally; could sit for two hours without interruption and for a total of eight hours in the workday; could stand and walk for 30 to 45 minutes without interruption and for a total of one hour in the workday; could occasionally reach, handle, finger, feel, push, and pull on the right side; could occasionally use her feet; should avoid heights and climbing ladders; and could frequently climb stairs and ramps, stoop, kneel, crouch, and crawl. (*Id*. at 684-85). The ALJ gave this opinion great weight overall, noting Dr. Chopra's "expertise," "recent review of [Plaintiff's] entire medical file," the detail provided in his testimony, and "the consistency of his opinions with the overall medical evidence[.]" (*Id*. at 645). However, the ALJ gave "no weight to the right-sided manipulative and reaching limitations assigned by Dr. Chopra," finding them inconsistent with the overall evidence, including medical records from 2021 and 2023, and the opinions of consultative examiners Dr. David Brauer and Dr. John Schwab and medical consultant Dr. Renato Abueg. (*Id*. at 645-46).

Plaintiff argues that the ALJ failed to properly consider the *Burgess* factors when assessing Dr. Chopra's opinion. (Dkt. 14-1 at 26-27). The Court disagrees. The ALJ expressly took into account Dr. Chopra's expertise as a sports medicine physician, the recency of his review of Plaintiff's medical records, the detail he

provided in support of his testimony, and the consistency of Dr. Chopra's opinions with the rest of the medical evidence. (Dkt. 5 at 645).

Further, and contrary to Plaintiff's arguments, the ALJ provided adequate reasons for rejecting Dr. Chopra's finding of right-sided manipulative and reaching limitations. *See Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("An ALJ may accept parts of a doctor's opinion and reject others."). As the ALJ noted, Plaintiff's medical records reflect successful treatment for both carpal tunnel syndrome and arthritis. (Dkt. 5 at 646; *see* Dkt. 6 at 103). And on examination by Dr. Schwab in May 2023, Plaintiff had intact hand and finger dexterity and 5/5 grip strength bilaterally. (Dkt. 7 at 605).

The ALJ also appropriately relied on the opinions of Drs. Brauer, Abueg, and Schwab, none of whom identified any right-sided manipulative and reaching limitations. *See Camille*, 652 F. App'x at 28 (ALJ appropriately compared medical opinions and found one more reliable than the other); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 315 (E.D.N.Y. 2023) ("an ALJ is free to . . . choose between properly submitted medical opinions") (citation omitted).

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff contends that the ALJ should not have relied upon the opinions of Drs. Brauer, Schwab, and Abueg for various reasons, including that they are "outlier opinions" and that Drs. Brauer and Schwab examined Plaintiff only once. (Dkt. 14-1 at 27-28). But "the ALJ's factual findings may be set aside only if a reasonable factfinder would have had to conclude otherwise." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 589 (S.D.N.Y. 2014). This is a case where three physicians reached one conclusion, and other physicians disagreed. "[I]t

is the role of the ALJ to resolve genuine conflicts in the medical evidence." *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *6 (W.D.N.Y. May 3, 2021). The Court finds no reversible error in the ALJ's assessment of Dr. Chopra's opinion.

**B. <u>Duty to Develop the Record</u>**

In her reply brief, Plaintiff argues for the first time that the ALJ failed to develop the record as to limitations caused by her fibromyalgia and other rheumatological impairments. (Dkt. 25 at 6). As an initial matter, "new arguments may not be made in a reply brief[.]" *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999); see *also Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992) ("To consider an argument discussed for the first time in reply would be manifestly unfair to the [opposing party] who . . . has no opportunity for a written response. Moreover, it would risk the possibility of an improvident or ill-advised opinion, given our dependence . . . on the adversarial process for sharpening the issues for decision.") (quotation omitted). As such, it would be unwarranted for the Court to reverse the Commissioner's determination based on an argument to which he has had no opportunity to respond.

Further, and in any event, Plaintiff's argument fails on the merits. "[T]he ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ's duty in this regard "arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination[.]" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). However, "the ALJ's affirmative duty to expand the records does not extend

*ad infinitum*." *Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015) (quotation and alterations omitted). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quotation omitted).

While Plaintiff is correct that Dr. Chopra testified that he did not have expertise related to fibromyalgia and other rheumatological impairments (*see* Dkt. 5 at 685), that did not create an obvious gap in the administrative record. Numerous other physicians either examined Plaintiff or reviewed the medical record. The ALJ also had complete treatment records, which included records from Plaintiff's rheumatologist. (*See* Dkt. 6 at 679-716). Plaintiff has failed to demonstrate that the ALJ failed in his duty to develop the record or that remand is warranted on this basis.

In sum, the Court finds no reversible error in the ALJ's June 24, 2024 unfavorable decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Colleen D. Holland
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: September 21, 2026
Rochester, New York